IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| TINA MARIE KEE, | Case No. 16-cv-05170-MMC |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| NANCY A. BERRYHILL, | |
| Defendant. | Re: Dkt. Nos. 22, 26 |

Before the Court is plaintiff Tina Marie Kee's ("Kee") motion for summary judgment, filed April 30, 2017, by which Kee seeks judicial review of a decision issued March 17, 2015, by an administrative law judge ("ALJ"), denying her claim for Social Security benefits. Also before the Court is the cross-motion for summary judgment, filed June 20, 2017, by defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"). Pursuant to Civil Local Rule 16–5, the motions have been submitted on the papers without oral argument. Having read and considered the parties' respective written submissions, the Court rules as follows.

**BACKGROUND**

In June 2012, Kee filed an application for Supplemental Security Income ("SSI") benefits, alleging disability beginning April 11, 2011, based on numerous mental and physical conditions. On November 14, 2012, the Social Security Administration ("SSA") denied the application and, on August 7, 2013, denied Kee's request for reconsideration. On September 17, 2013, Kee requested a hearing before an ALJ, and, on December 10,

2014, the ALJ conducted a hearing, at which time Kee testified, as did a vocational expert ("VE").

On March 17, 2015, the ALJ issued her decision, finding, based on the five-step sequential evaluation process set forth in the Code of Federal Regulations,[1] Kee was not disabled. At step one, the ALJ determined Kee had not engaged in substantial gainful activity since her application date. At step two, the ALJ found Kee had four "severe impairments," namely, "depression, post-traumatic stress disorder ('PTSD'), borderline intellectual functioning, and lumbar spine degenerative disc disease." (See Certified Administrative Record ("CAR") 26.) At step three, the ALJ determined Kee did not have an impairment or combination of impairments that met or equaled a listed impairment,[2] in particular, Listings 1.04, 12.04, 12.05, 12.06, and 12.08, which listings pertain, respectively, to "disorders of the spine," including degenerative disc disease, see 20 C.F.R. pt. 404, subpt. P, app. 1, § 104, "affective disorders," including depression, see id. § 12.04, "mental retardation," see id. § 12.05, "anxiety-related disorders," see id. §12.06, and "personality disorders," see id. § 12.08.

Before continuing to step four, the ALJ determined Kee's "residual functional

---

[1] "The ALJ performs a 'sequential evaluation process' which ends when the ALJ finds that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). At the first step, a claimant 'doing substantial gainful [work] activity' is not disabled. Id. § 416.920(a)(4)(i). At the second step, a claimant is not disabled unless she has a 'medically determinable physical or mental impairment' or combination of impairments that is severe and either lasts at least a year or results in death. Id. § 416.920(a)(4)(ii). At the third step, a claimant is disabled if the severity of her impairments meets or equals one of various impairments listed by the Commissioner, 20 C.F.R. pt. 404, subpt. P, app. 1. Id. § 416.920(a)(4)(iii). At the fourth step, a claimant is not disabled if her residual functional capacity ('RFC') allows her to perform her past relevant work. Id. § 416.920(a)(4)(iv). At the fifth and final step, a claimant is disabled if she cannot make an adjustment to other work that 'exists in significant numbers in the national economy,' id. § [416.920(c)(2)], given her RFC, age, education, and work experience, id. § 416.920(a)(4)(v)." Gardner v. Berryhill, 856 F.3d 652, 654 n.1 (9th Cir. 2017).

[2] The SSA's "Listing of Impairments . . . describes specific impairments of each of the major body systems which are considered severe enough to prevent a person from doing any gainful activity." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (internal quotation and citation omitted).

capacity" ("RFC")[3] and, in that regard, found Kee could perform, subject to certain limitations, "medium work as defined in 20 CFR § 416.967(c)." (See CAR 29.)[4] At step four, the ALJ, relying on testimony provided by the VE, found Kee was "capable of performing past relevant work as a personal attendant." (See id. 35.) Based thereon, the ALJ denied Kee's application at the fourth step.[5]

Subsequently, Kee requested the Appeals Council ("AC") review the ALJ's decision and submitted new evidence, namely, medical records from March 21, 2014, to March 16, 2015, and a medical source statement dated April 29, 2015. On July 29, 2016, the AC denied review, explaining it had considered both "the reasons [Kee] disagree[d] with the [ALJ's] decision" and the above-referenced medical records, and that "this information [did] not provide a basis for changing the [ALJ's] decision" (see id.). The AC did not consider the medical source statement, which was a mental impairment questionnaire, because it found the questionnaire "[did] not affect the decision about whether [Kee was] disabled beginning on or before March 17, 2015" (see id.), the date of the ALJ's decision.

On September 8, 2016, Kee filed the instant petition for review.

## STANDARD OF REVIEW

"An ALJ's disability determination should be upheld unless it contains legal error or

---

[3] The claimant's RFC is "the most [the claimant] can still do despite [his/her] limitations." See 20 C.F.R. § 416.945(a)(1); see also SSR 96-8p, 1996 WL 374184, at *1 (explaining "[o]rdinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule").

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." See 20 C.F.R. § 416.967(c). "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms." SSR 83-10, 1983 WL 31251, at *6.

[5] Consequently, the ALJ did not reach the fifth step of the sequential analysis.

is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court must consider "the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion," see id., and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," see id. at 1039–40. Where the AC "considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (internal quotation, citation, and alterations omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and . . . resolving ambiguities." Andrews, 53 F.3d at 1039. Where the claimant "has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering, [the court] review[s] the ALJ's rejection of [the claimant's] testimony for specific, clear and convincing reasons." Burrell, 775 F.3d at 1136 (internal quotation and citation omitted). In addition, where other doctors' opinions contradict the opinion of the claimant's treating physician, the court "review[s] the ALJ's rejection of [the treating physician's] opinion for specific and legitimate reasons that are supported by substantial evidence." See Burrell, 775 F.3d at 1137 (internal quotation and citation omitted). The court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." See Garrison, 759 F.3d at 1010.

"Even when the ALJ commits legal error," however, the reviewing court must "uphold the decision where that error is harmless." See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation, citation, and alteration omitted). "An

4

1 error is harmless only if it is inconsequential to the ultimate nondisability determination"
2 or, where the error is based on a lack of specificity, if "the agency's path may reasonably
3 be discerned." See id. at 494 (internal quotation and citation omitted).

**DISCUSSION**

In her motion for summary judgment, Kee contends, inter alia, that the ALJ erred by not finding her disabled at step three of the disability determination. In particular, Kee argues that, pursuant to "Listing 12.05C," she is "per se disabled based on her IQ of 67 and the presence of several other impairments which the ALJ found" at step two (see Pl.'s Mot. for Summ. J. ("MSJ") at 8:2–3) and, consequently, that the instant case "must be remanded . . . for immediate payment of benefits" (see id. at 10:8–9).[6] The Court begins by addressing the ALJ's step three analysis.

**A. Step Three**

At step three, the ALJ "considers the medical severity of [the claimant's] impairment(s)," see 20 C.F.R. § 416.920(a)(4)(iii), in particular, whether the claimant has "an impairment[] that meets or equals one of [the SSA's] listings," see id. "[A] claimant seeking [SSI] benefits establishes a disability if he shows that he meets or equals a listed impairment." See Kennedy v. Colvin, 738 F.3d 1172, 1173 (9th Cir. 2013).

As noted above, Kee relies on Listing 12.05, which listing is titled "mental retardation" and defines such impairment as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the

---

[6] Although the ALJ, as noted above, found Kee did not "meet or medically equal the criteria" for multiple listings (see CAR 27), Kee, in her motion, challenges the ALJ's rejection of only one of those listings, namely, Listing 12.05C. Accordingly, the Court has not addressed herein the ALJ's findings with respect to the other listings, nor has the Court addressed Kee's contentions, raised for the first time in her reply brief, that she meets, based on "Schizo-Affective Disorder" and "severe depression and bipolar disorder," the requirements for Listings 12.03 and 12.04, respectively. (See Pl.'s Reply Mem. at 10:6–7); see also, e.g., Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 843 n.6 (9th Cir. 2004) (declining to consider argument raised for first time in reply brief because opposing party had no opportunity to respond).

impairment before age 22," see 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (Apr. 1, 2012);[7] specifically, Kee relies on paragraph C of such listing, which paragraph requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function," see id. § 12.05C.[8] Consequently, Kee "satisfies Listing 12.05C . . . if [s]he can show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." See Kennedy, 738 F.3d at 1173.

Here, the ALJ addressed only the second and third of the above requirements. In particular, although the ALJ found Kee had an IQ score of 67, she nonetheless found Kee did not meet "the 'paragraph C' criteria," stating: "[T]he record does not support a finding, discussed in detail below [in the analysis of Kee's RFC],[9] that [Kee] has a physical or other mental impairment imposing an additional and significant work-related limitation of function." (See CAR 29.) As set forth below, the Court finds the ALJ erred in her analysis of the third, i.e., other impairment, element.

---

[7] Although the parties, without citation to the applicable year, quote different versions of Listing 12.05, the Court finds there is no substantive difference between those versions. See Kennedy, 738 F.3d at 1175 n.1 (noting "[t]he 'intellectual disability' impairment listed under § 12.05 was formerly referred to as 'mental retardation'"; explaining "[t]he substance of the listing [was] not changed"). In any event, the Court applies herein the listing in effect at the time Kee's application was filed, namely, the version in effect on June 19, 2012. See Maines v. Colvin, 666 F. App'x 607, 608 (9th Cir. 2016) (holding, in relevant part, "the ALJ should have continued to evaluate [claimant's] application under the listings in effect at the time she filed her application"); see also Blacktongue v. Berryhill, 229 F. Supp. 3d 1216, 1221 n.6 (W.D. Wash. 2017) (reversing ALJ's use of listing in effect at time of ALJ's decision (citing Maines)).

[8] Listing 12.05 was recently reorganized and no longer includes a paragraph C. See Revised Med. Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66150, 66156 (Sept. 26, 2016) (noting January 17, 2017, effective date for revised rules); see also Taroni v. Berryhill, No. 5:16-cv-03520-EJD, 2017 WL 4026108, at *5 n.3 (N.D. Cal. Sept. 13, 2017).

[9] In her RFC analysis, the ALJ rejected various medical practitioners' findings as to the extent of Kee's ability to function in a work setting. See, e.g., CAR 34, 312 (rejecting consultative examiner Les Kalman, M.D.'s finding that Kee is "not able to interact with supervisors and co-workers").

6

The applicable regulations specify that, "[f]or paragraph C," the SSA "will assess the degree of functional limitation the additional impairment[] imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment[], as defined in . . . [§] 416.920(c)." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A; see also id. § 416.920(c) (defining "severe impairment" as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities"); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (holding "[a]n impairment . . . can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work'") (quoting SSR 85–28). Numerous courts have held that, where an impairment is "severe" for purposes of step two, such impairment is also "severe" for purposes of the third element of Listing 12.05C. See, e.g., Taroni, 2017 WL 4026108, at *5 (holding third element "was effectively satisfied by the ALJ's [s]tep [t]wo finding that [p]laintiff had other severe impairments"); Rhein v. Astrue, No. 1:09-cv-01754-JLT, 2010 WL 4877796, at *10 (E.D. Cal. Nov. 23, 2010) (holding "a step two finding of a severe impairment necessarily determines that the [other impairment] prong is satisfied") (emphasis in original).

Here, at step two, the ALJ, as noted above, determined Kee had three severe impairments in addition to borderline intellectual functioning: depression, PTSD, and lumbar spine degenerative disc disease. (See CAR 26 (finding the above-referenced impairments "cause more than minimal limitations in the claimant's ability to perform work-related activities, and are therefore severe"); see also id. (repeating, at outset of step three analysis, determination that Kee's degenerative disc disease "constitute[s] [a] severe impairment[]").) Nevertheless, at step three, the ALJ concluded Kee did not have any "impairment imposing an additional or significant work-related limitation of function" (see id. 29), i.e., any additional severe impairment. In light of the above-described inconsistency, the Court finds the ALJ erred in her analysis. See Rhein, 2010 WL 4877796, at *11 (reversing and remanding; holding ALJ's step two finding of multiple

7

1  "severe" impairments "cannot be squared with the ALJ's determination that [p]laintiff
2  suffers only mild or minimal impact on her ability to work due to her impairments");
3  Jackson v. Astrue, No. CV 08-1623 JC, 2008 WL 5210668, at *5 (C.D. Cal. Dec. 11,
4  2008) (reversing and remanding; holding ALJ "failed to resolve the apparent
5  inconsistency between his finding [at step two] that plaintiff's depression was severe and
6  his finding [at step three, pursuant to Listing 12.05C,] that plaintiff did not have any other
7  mental impairment that would impose an additional and significant work-related
8  limitation").

Further, given the ALJ's determination at step four, the Court cannot find such error is harmless. Although the Commissioner argues that Kee has not shown her mental retardation predated her twenty-second birthday, such argument is unavailing, as the ALJ did not address in any manner in her decision the question of onset.[10] See Garrison, 759 F.3d at 1010 (holding court "may not affirm the ALJ on a ground upon which [the ALJ] did not rely"); Jackson, 2008 WL 5210668, at *6 (rejecting defendant's argument that plaintiff failed to show onset before age twenty-two, where ALJ "did not state that plaintiff failed to meet or equal listing 12.05C on this basis").

Accordingly, the Court finds the ALJ erred in her step three assessment of Listing 12.05C, and that such error was not harmless.[11]

---

[10] Contrary to the Commissioner's argument, nothing in Listing 12.05 requires a claimant to produce "an IQ score taken prior to age twenty-two." (See Opp'n at 5:7); see, e.g., Gomez v. Astrue, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010) (holding "IQ tests . . . prior to age 22 [are] not required to establish onset before that age"). On the other hand, although Kee cites to several out-of-circuit decisions holding there is a presumption that one's IQ score remains stable over time, the Ninth Circuit does not appear to have addressed the issue, and, in any event, even if the Ninth Circuit were to find in accord with the decisions cited by Kee, the Commissioner has pointed to conflicting evidence in the record sufficient to raise, as to the time of onset, a question requiring resolution by the ALJ. (See, e.g., CAR 53 (Kee's testimony that, in elementary school, "they would take me out of class to go into a special class"); id. 180 (responding "No" when asked whether she attended special education classes; acknowledging she completed GED in 1984).)

[11] In light of such finding, the Court does not address herein additional errors Kee contends were made by the ALJ.

8

**B.     Remedy**

As noted above, Kee asks the Court to remand the case for an award of benefits. In particular, Kee contends, "[t]he findings of low IQ and any other severe impairment at Step 2 mandate[] a determination that [she] is per se disabled under Listed Impairment 12.05C" (see MSJ at 1:12–14) and thus require "remand[] not for further proceedings but for immediate payment of benefits" (see id. 10:8–9).

"A remand for an immediate award of benefits is appropriate . . . only in rare circumstances," see Brown-Hunter, 806 F.3d at 495 (internal quotation and citation omitted), namely, where the following three "requirements" are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," see Garrison, 759 F.3d at 1020; see also Treichler v. Commissioner, 775 F.3d 1090, 1101–02 (9th Cir. 2014) (finding, even where three requirements are met, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the reviewing court's] discretion" (internal quotation and citation omitted).

Here, given the ALJ's inconsistent findings as to the severity of Kee's other impairments and her failure to address the conflicting evidence pertaining to the onset of Kee's mental retardation (see supra n.10), the Court cannot say further administrative proceedings would serve no useful purpose.  Accordingly, the Court finds it appropriate to remand for further proceedings.[12]

**CONCLUSION**

For the reasons stated above, Kee's motion for summary judgment is hereby GRANTED, the Commissioner's cross-motion for summary judgment is hereby DENIED,

---

[12] On remand, the ALJ is not precluded from addressing any other asserted deficiency raised by Kee in her motion and reply.

9

and the action is hereby REMANDED, under sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: April 5, 2018

MAXINE M. CHESNEY
United States District Judge